IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BOBBIE ADAMS**                                                                       **PLAINTIFF**

v.                                                                 CIVIL ACTION NO. 3:24-cv-236-KHJ-MTP

**SHERIFF BRYAN BAILEY** individually and
in his official capacity as the Sheriff for
Rankin County, Mississippi;
**K-9 OFFICER TONY SHACK,** individually and in
his official capacity as a duly commissioned Deputy Sheriff
for Rankin County, Mississippi;
**INVESTIGATOR CHRISTIAN DEDMON,** individually
and in his official capacity as a duly commissioned Deputy Sheriff
for Rankin County, Mississippi;
**RANKIN COUNTY, MISSISSIPPI;**
and **JOHN AND JANE DOES A-Z**                                                 **DEFENDANTS**

## COMPLAINT

## THE PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff, Christopher Bobbie Adams (hereinafter "Plaintiff"), brings this suit against the Defendants, who are Rankin County Sheriff Bryan Bailey, Rankin County K9 Deputy Tony Shack, Rankin County Investigator Christian Dedmon, Rankin County, Mississippi, and John and Jane Does A-Z, and in support thereof states as follows:

### PARTIES

1. Plaintiff Bobbie Adams is an adult resident of the United States of America and the State of Mississippi. Mr. Adams is Black. At all times material to this Complaint he resided in Rankin County, Mississippi. The infliction of the named actions on Bobbie Adams (hereinafter Adams) were performed in Rankin County, Mississippi.

1

2.  Defendant Sheriff Bryan Bailey is the elected sheriff of Rankin County, Mississippi. He may be served with process at 221 North Timber Street, Brandon, Mississippi. He is sued in his individual and official capacities. At all times material hereto, this Defendant was located within Rankin County, Mississippi, vested with the responsibility and authority to hire, train, supervise, set policies and procedures, enforce the policies and procedures adopted or otherwise implemented and to provide protection to the citizens of Rankin County, Mississippi and all others present in that jurisdiction, including Bobbie Adams. Defendant Bailey is White.

3.  Rankin County K9 Deputy Tony Shack is believed to be an adult resident citizen of Rankin County, Mississippi. He is sued in his official and individual capacity. At all times material hereto, he was employed by the Rankin County Mississippi Sheriff's Department and supervised by Sheriff Bryan Bailey. Deputy Shack is a "K-9 officer" and was the handler for his canine partner, named "VooDoo." He may be served with lawful process at 221 North Timber Street, Brandon, Mississippi. Defendant Shack is White.

4.  Rankin County Investigator Christian Dedmon is a convicted felon who is serving both federal and state prison sentences for criminal civil rights violations similar to those complained of herein. At all times material hereto, this convicted felon was employed by the Rankin County Mississippi Sheriff's Department and supervised by Sheriff Bryan Bailey. He was affiliated with the Rankin County "Goon Squad," a group of Rankin County Sheriff's Deputies organized within the Sheriff's Department with the specific purpose of violating the civil rights of citizens. According to the Mississippi Department of Corrections, Dedmon is not in their custody as of the date of this filing. He is believed to be in the custody of the United States Bureau of Prisons, but an inmate search through the Bureau's website failed to provide any information as to his whereabouts. He may be served in the prison where he may be found. Defendant Dedmon is White.

5. Rankin County, Mississippi is a municipality organized under the laws of the State of Mississippi. This Defendant may be served with process by service upon its Chancery Clerk, Hon. Mark Scarborough, at 211 E Government St, Brandon, Mississippi, or as may be otherwise proper under Mississippi law.

6. Defendants John and Jane Does A-Z are unknown individuals and/or entities liable to Plaintiff for the acts and omissions as alleged herein. The names and capacities of Defendants John Does A-Z – whether individual, corporate, or otherwise – are presently unknown to Plaintiff, who therefore sues said Defendants by fictitious names and will further seek leave of this Honorable Court to amend this Complaint to show their true names and capacities when the same are ascertained. Plaintiff alleges upon information and belief each of the Defendants designated herein as a Doe is responsible in some manner and liable herein to Plaintiff by reason of negligence, wanton and reckless misconduct, deprivation of civil rights, conspiracy to violate civil rights, and/or in some other manner whether alleged herein in this Complaint or not, and by such wrongful conduct, said Defendants, each of them, proximately caused the injuries, deprivations, and damages occasioned herein.

7. At all times material to this Complaint, Defendants were acting under the color of law, and/or under the color of the statutes, customs, ordinances, and usage of the State of Mississippi and/or their respective municipalities.

8. When the word "Defendants" is used herein, it is meant to refer to all real and fictitious Defendants mentioned in the style of this Complaint.

## JURISDICTION

9. The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States.

## VENUE

10.     Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. §§ 1391(b) in that the alleged acts and omissions of the Defendants occurred exclusively within the territorial limits of this judicial district and division. Additionally, the Defendants are found within the territorial limits of this judicial district and division.

## FACTS

### I.    THE DEFENDANTS ENGAGED IN A YEARS-LONG CONSPIRACY TO USE EXCESSIVE FORCE TO DEPRIVE AMERICANS OF THEIR CONSTITUTIONAL RIGHTS AND TO OBSTRUCT JUSTICE

#### A.    *The Goon Squad*

11.     For years preceding the Plaintiff's mauling by the Defendants, the Rankin County Sheriff's Department – under the leadership of Defendant Sheriff Bryan Bailey – engaged in an ongoing, coordinated scheme to deprive Americans of their civil rights and to obstruct justice.

12.     Under Defendant Sheriff Bryan Bailey, the Rankin County Sheriff's Department maintained a group of law enforcement officers called "the Goon Squad." The Goon Squad was specifically tasked with using illegal methods to abuse and intimidate people the Sheriff and others employed by Defendant Rankin County viewed as undesirable or otherwise unworthy of protection.

13.     Those viewed as undesirable were frequently Black and were unwelcome in Rankin County specifically because they were Black.

14.     The Goon Squad operated under the direction of a now-convicted felon whom Defendant Bailey chose for leadership within the Rankin County Sheriff's Department. The Goon Squad reported to Rankin County Sheriff's Lieutenant Jeffery Middleton.

15.     Prior to his hiring by Defendant Bailey, Middleton had been fired by the Jackson Police Department for committing the felony crime of vehicular manslaughter. Middleton pled guilty to the

charge in neighboring Hinds County, having been indicted for driving his Jackson Police Department-issued patrol car at speeds approaching 100 mph and colliding with a motorist, killing him. Middleton received leniency from the Hinds County Circuit Court after his guilty plea however, and the Court placed him on nonadjudicated probation.

16. Middleton's arrest and guilty plea were well-publicized in the Jackson metropolitan area. As of the date of the filing of this Complaint, Middleton's file in the Hinds County Circuit Clerk remains a public record and has not been expunged.

17. Defendant Bailey knew of Middleton's history when he hired him. Yet Defendant Bailey still hired Middleton and promoted him to the position of lieutenant within Defendant Rankin County's Sheriff's Department.

18. In his position as lieutenant, Middleton was the director of Defendant Rankin County's Goon Squad.

19. Goon Squad members possessed and displayed challenge coins that bore the title "Lt. Middleton's Goon Squad" on one side. On the other side, the coins bore the seal of Defendant Bailey's Rankin County Sheriff's Department:



20. This was not the only version of the Goon Squad challenge coin, however. An earlier version contained images of a Confederate flag and a noose, making the racist and discriminatory purpose of the Goon Squad completely clear.

21. The Goon Squad operated in Defendant Rankin County's Sheriff's Department for some time, and its existence was known to members of that department, including each of the Defendants in this matter.

    B. *Defendant Dedmon and the Goon Squad Attack of January 2023*

22. Defendant Dedmon's state and federal convictions stem from his violent actions alongside Defendant Rankin County's Goon Squad in January of 2023.

23. In that incident, Brett McAlpin – the Chief Investigator for Defendant Bailey's and Defendant Rankin County's Sheriff's Department – reached out to Defendant Dedmon and relayed a

concern from one of McAlpin's White neighbors about the presence of two Black men at a home in McAlpin's neighborhood. McAlpin directed Defendant Dedmon to take care of the matter.

24. The message was clear: Defendant Dedmon and other members of Defendant Rankin County and Defendant Bailey's Sheriff's Department were to rid the neighborhood of the two Black men whom the White residents did not want around.

25. In response, Defendant Dedmon contacted members of Defendant Rankin County's Goon Squad and sought their help in intimidating and abusing the two Black neighbors.

26. Defendant Dedmon asked these members of the Rankin County Goon Squad if they were available for a mission, and they replied that they were.

27. Defendant Dedmon then gave instructions to the Goon Squad about how to approach the house where the two Black men lived in order to avoid detection by video cameras.

28. Defendant Dedmon and the Goon Squad then followed through on Defendant Dedmon's plan, entering the home by force and without a warrant.

29. Once inside Defendant Rankin County's Goon Squad members and Defendant Dedmon brutalized and tortured the two Black men.

30. Defendant Dedmon often took the lead in the torture, tasing one of the Black men after he'd been placed in handcuffs, discharging his service firearm, and beginning to sodomize one of the Black men before realizing the man had defecated upon himself.

31. Defendant Dedmon also planted drug evidence at the scene of the January 2023 attack.

32. The other members of Defendant Rankin County's and Defendant Bailey's Sheriff's Department participated alongside Defendant Dedmon in the torture, and subsequently conspired with each other to file false affidavits and reports to hide their illegal activities from others outside of

Defendant Rankin County's Sheriff's Department. As shown below, Defendant Dedmon used this same false report tactic to cover up the torture of the Plaintiff in this action.

C.  *Defendant Bailey knowingly and intentionally built a violent and corrupt Rankin County Sheriff's Department*

33. These actions were part of a culture of violence and racism created, cultivated, and encouraged by Defendant Sheriff Bryan Bailey and those he intentionally placed in positions of leadership.

34. Once the operations of Defendant Rankin County's Goon Squad became public following the January 2023 attack, investigative journalists began to uncover previously unknown acts of violence by Defendant Rankin County's and Defendant Bryan Bailey's Sheriff's Department. (See the New York Times article "How a 'Goon Squad' of Deputies Got Away with Years of Brutality" attached as Exhibit 1 and incorporated herein as if reproduced in full.)

35. In all, there have been **at least 17 acts of warrantless violence against American citizens by men under the direction of Defendant Bryan Bailey**. Several of these men were high-ranking officials within the Rankin County Sheriff's Department, including the undersheriff.

36. Defendant Bryan Bailey was directly aware of some of these incidents, as complaints were at times made directly to him.

37. Defendant Bailey did nothing to investigate or correct the behavior of Rankin County deputies who were the subject of the complaints.

38. To the contrary, Defendant Bailey honored them with titles, promotions, and awards such as "Investigator of the Year."

39. In addition, TASER logs kept by Defendant Bailey as Sheriff for Defendant Rankin County show widespread, rampant excessive use of conducted energy weapons by Rankin County Sheriff's Department employees upon citizens.

40. Despite being in possession of the TASER logs showing prima facie evidence of civil rights violations, Defendant Bailey did nothing.

41. Defendant Bailey himself participated in the violent deprivation of civil rights through use of excessive force and destroyed evidence of the same.

42. In all, the Defendants conspired with one another to violate the civil rights of Black citizens on account of their race, to violate the civil rights of others they viewed as undesirable, and further to obstruct justice through the destruction of evidence and the creation of false reports. This conspiracy began well before the events complained of by the Plaintiff herein and occurred over the course of years. This ongoing conspiracy – led and condoned by the chief law enforcement officer and policymaker for Defendant Rankin County himself, Defendant Bryan Bailey – was the direct and proximate cause of the violation of the Plaintiff's civil rights on May 1, 2021, as complained of herein.

## II. THE PLAINTIFF WAS TORTURED BY RANKIN COUNTY SHERIFF'S DEPARTMENT EMPLOYEES AS PART OF THEIR ONGOING, YEARS-LONG CONSPIRACY

*The Plaintiff's Arrest*

43. On May 1, 2021, Plaintiff Bobbie Adams, a Black man, was arrested by the Rankin County Sheriff's Department for sale of methamphetamine to a confidential informant.

44. Defendants Dedmon and Shack, who are White, as well as at least four other unknown members of the Rankin County Sheriff's Department, participated in the torture of the Plaintiff <u>after his arrest</u>.

45. Specifically, the Plaintiff – after a short chase on foot near Highway 469 in Rankin County – gave himself up to a squad of Rankin County Sheriff's Department employees containing approximately six deputies.

46. Specifically, the Plaintiff ran from the Defendant deputies but executed a circular movement which allowed him to "double back" and sit quietly in the woods next to the same trail he had taken away from law enforcement.

47. At this point, the Plaintiff was hidden in a ditch area. He viewed most of the Defendant deputies pass him by, but then decided to give himself up to a deputy that was lagging behind the others.

48. Once the Plaintiff called out to the last deputy, the deputy pointed a firearm at the Plaintiff and called the other Defendant deputies to join him.

49. Adams was then handcuffed and subdued in a sitting position on the ground.

50. When the other deputies arrived, Adams was still sitting on the ground.

51. The Rankin County Sheriff's Office Dispatch Report reveals that Adams was taken into custody at 22:36:26. (See Exhibit 2.)

*The Dog Attack*

52. Eight minutes *after* Adams was taken into custody, at 22:44:05, Rankin County Sheriff's Department dispatch noted that Adams needed medical attention. (Ex. 2)

53. A full thirteen minutes after Adams was taken into custody, Rankin County Sheriff's Department dispatch noted that "VooDoo was released." (Ex. 2)

54. It was in the eight minutes after the Plaintiff was <u>handcuffed, in custody, and no longer evading arrest or in any way resisting arrest</u> that Defendant Shack used the dog known as "VooDoo" to attack the Plaintiff. The particular dog (pictured below) was in the custody of Defendant Shack as part of his duties as a Rankin County Sheriff's Deputy.



55. As Defendant Shack held VooDoo's leash, the dog began to attack the handcuffed and compliant Plaintiff, biting and chewing upon the Plaintiff's feet and legs repeatedly. Aside from the numerous substantial, full-thickness puncture wounds inflicted by the dog's bites, the dog also crushed and dislocated numerous bones in the Plaintiff's left foot, which are highlighted here:



*The Cover Up*

56.     Prior to the arrival of the ambulance, the Defendant Rankin County deputies conspired with one another to concoct a false version of how the Plaintiff came to be injured by their dog.

57.     The Defendants – named and unnamed – devised a false story that the Plaintiff was running when he was tackled by the attack dog, VooDoo. In truth, none of the injuries sustained by the Plaintiff were caused by his flight.

58.     The Defendants then tasked Defendant Dedmon with writing the only report of the incident, which is attached hereto as Exhibit 3.

59.     In an attempt to explain the excessive number of dog bite puncture wounds, Defendant Dedmon falsely stated that the Plaintiff kicked at VooDoo "which caused him to be bitten several *more* (sic)." (Omission in the original; emphasis added.)

60. Defendant Dedmon also contradicts the report the unknown Defendant gave to medical personnel, stating that the Plaintiff fractured his foot while fleeing law enforcement.

61. In an effort to avoid future investigation into the attack, Defendant Dedmon fails to name the deputy controlling VooDoo, and refers to him only as 'Cpl.'

62. Defendant Dedmon further attempted to frustrate and obstruct future investigation by failing to name any of the other Rankin County deputies on scene.

63. Defendant Dedmon does not even give the number of Rankin County deputies that were there to assist him.

64. It is believed by Adams that as many as six (6) total were on site, most in unmarked cars. Defendant Dedmon's report itself only states "other marked Deputies."

65. One unknown Defendant told medical professionals a version of the false story as part of the conspiracy to hide the Defendants' illegal actions:

> HPI: Bobbie Adams is a 38 y.o. male who presents to the ED s/p fall while running from the police with pain to his left foot. Patient reports he cannot recall the event. Per police officer, the patient was attempting to flee last night when they pursued him. Dogs were used to assist with the apprehension and tackled the patient. After sustaining the injury, patient reports sudden onset of moderate pain localized to his left foot. The pain is exacerbated with movement and palpation but alleviated with rest, pain medication, and immobilization. Patient denies numbness/tingling in the injured foot.

66. In an effort to investigate the torts committed by the Defendants, Plaintiff Adams put the Rankin County Sheriff's Department on notice to preserve any and all evidence. (See Exhibit 4.)

67. Further, Plaintiff Adams demanded discovery of the entire file on the incident. (See Exhibit 5).

68. This request was rejected by Defendant Rankin County.

69. Instead, Defendant Rankin County only produced Defendant Dedmon's falsehood-riddled incident report.

70. The dispatch record that lays bare the lies in Defendant Dedmon's report was recovered not in response to the request by Adams, but from the District Attorney as part of Adams's criminal prosecution for sale of methamphetamine.

71. The District Attorney and his employees would not have known of the need to keep this information from Adams, as they were not aware of the deprivation of rights and conspiracy to hide the same.

72. The Plaintiff suffered severe injuries as a result of the actions of the Defendants. As medical records will show, his left foot extending to his upper thigh was torn, crushed, and ripped by VooDoo during the attack, requiring extensive surgery. Further, Adams's right leg was also injured by dog bite puncture wounds in the 'mid-calf' area.

73. This dog attack occurred while Defendants Bailey and Rankin County knew or should have known full well the nature and extent of the pervasive, violent, racism-fueled culture of the Rankin County Sheriff's Department.

74. The departmental culture created by Defendant Bailey was a direct and proximate cause of this attack upon the Plaintiff and the other attacks shown in Exhibit 1.

## COUNT I

### *VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS (42 U.S.C. §1983)*

### *As to all Defendants*

75. The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the preceding paragraphs.

76. Every American has a Fourth Amendment right to be free from the use of excessive force by law enforcement officers. See *Graham v. Connor*, 490 U.S. 386 (1989). Under 42 U.S.C. § 1983, Americans may pursue claims against governmental entities for violations of that right.

77. Once a person has been seized by police, in order to recover damages for excessive use of force, they must "show that (they) suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the use of force was objectively unreasonable." See *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

78. As set forth above, the Defendants, under color of state law as employees and officials of the Rankin County Sheriff's Department, subjected Mr. Adams to, or caused Mr. Adams to be subjected to, the deprivation of his Fourth Amendment rights under the United States Constitution to be free from the use of excessive force.

79. First, Mr. Adams suffered the required injury. He sustained fractures and dislocations of bones in his left foot, as well as numerous full-thickness bite wounds to both of his legs.

80. Second, Mr. Adams's injuries resulted directly and only from the dog attack which took place once Mr. Adams was in handcuffs and in no way resisting arrest. Mr. Adams had flagged a deputy down, surrendered, and was waiting handcuffed on the ground when Defendant Shack set the dog upon him.

81. Third, the use of the dog to attack a compliant and handcuffed man who is sitting on the ground is objectively unreasonable.

82. Furthermore, the Plaintiff has shown hereinabove the existence of a conspiracy among the Defendants involving state action and a deprivation of his civil rights in furtherance of that conspiracy. Because the Defendants engaged in a conspiracy to deprive the Plaintiff of his Fourth Amendment rights, each may be held liable.

83. Additionally, Defendants Bailey and Rankin County are liable for these injuries as well pursuant to *Monell* liability. As stated above, the individual Defendants present at the scene of the attack were deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged,

directed, promoted, accepted, condoned, or permitted by Defendants Rankin County and Bailey, of using excessive force during the interactions with the public – especially if those citizens were Black or suspected drug users – as set forth in Paragraphs 11-42 above.

84. As set forth above Defendant Bailey wholly failed to train and supervise his officers at best, or at worst knowingly created the culture of violence and racism that led directly to the excessive use of force upon the Plaintiff.

85. Plaintiff therefore seeks compensation from the Defendants for the above-described constitutional violations and the damages stemming therefrom pursuant to 42 U.S.C. § 1983. Additionally, to the extent Mr. Adams prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

86. The Defendants, both named and unnamed are jointly and severally liable for the deprivation of Mr. Adams's constitutional rights as outlined herein.

## COUNT II

### *ACTION FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)*
### *As to all Defendants except Bailey and Rankin County*

87. The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the preceding paragraphs as if expressly rewritten herein.

88. "Section 1985(3) prohibits conspiracies to deprive any person equal protection of the laws." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 389 (5th Cir. 2017).

89. For a plaintiff to prevail on a claim for damages under 42 U.S.C. § 1985, he "must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).

16

90. As set forth above, Defendants Shack, Dedmon, and an unknown number of Does did (1) conspire with one another to use the dog to attack the Plaintiff and to cover up the evidence of the attack. These Defendants agreed with one another to inflict the wrongs and injuries described herein upon the Plaintiff through a single plan, the essential nature and general scope of which was known to each Defendant present at the scene of the attack.

91. Further, (2) the purpose of that conspiracy was to deprive the Plaintiff of the protection of the Fourth Amendment.

92. These Defendants also (3) loosed the dog upon the Plaintiff and worked with each other to hide and obfuscate the fact that the Plaintiff was already in custody and compliant when the dog attack happened.

93. The Plaintiff also (4) suffered the numerous injuries set forth herein.

94. Additionally, a plaintiff in the Fifth Circuit must also allege that a 42 U.S.C. § 1985 conspiracy is racially motivated. *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). As set forth above, the Plaintiff is Black, and the Defendants are White. Further, this dog attack occurred at the hands of Rankin County Sheriff's Department deputies. As described above, the Rankin County Sheriff's Department has utilized racist symbols such as a Confederate flag and noose internally as recently as within the past decade. Additionally, the Chief Investigator of the Rankin County Sheriff's Department recently pled guilty to setting in motion a separate conspiracy which had as its means and its objective using excessive force and violence to strike terror into the hearts of Black American citizens so that they would leave a White neighborhood. Defendant Dedmon has used excessive force specifically to terrorize Black men because they were Black and has used racist epithets while doing so. Additionally, the use of a police dog by White law enforcement officers to attack Black Americans is

also a tactic with a long associated with white supremacists and was a driving force for the Defendants in this case.

95. As a result of this conspiracy, the Plaintiff may recover against any one or more of the Defendants, both named and unnamed, for the deprivation of Mr. Adams's constitutional rights as outlined herein.

## JURY DEMAND

96. The Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands:

    a. That judgment be rendered in favor of the Plaintiff and against the Defendant on all causes of action and legally cognizable damages, including economic and non-economic damages, asserted herein in an amount to be determined by a jury under applicable law.

    b. That Plaintiff be awarded reasonable expenses incurred in this litigation, including attorney's fees and expert fees as well as pre- and post-judgment interest, pursuant to 42 U.S.C. § 1988 and related authority.

    c. That the Plaintiff receive any other further relief to which he is entitled.

RESPECTFULLY SUBMITTED, this the 23rd day of April, 2024.

                                                             /s/ Bobby Moak
                                                             BOBBY MOAK
                                                             Attorney for the Plaintiff

Bobby Moak, BAR #9915
The Law Office of Bobby Moak, P.C.
P.O. Box 242
Bogue Chitto, MS 39626
Phone: 601-734-2566 / Fax: 601-734-2563
Bobbymoak402@att.net

April 23, 2024
DATE

_/s/ Bobby Adams_
BOBBY ADAMS

## ATTESTATION

STATE OF MISSISSIPPI

COUNTY OF Greene

PERSONALLY appeared before me, the undersigned authority in and for the aforesaid County and State, the within name Bobby Adams, who acknowledged to me that he executed the above and foregoing document with the full authority to do so and states that the foregoing is true and correct as therein stated to the best of his knowledge and belief.

SWORN AND SUBSCRIBED before me this the 23 day of April, 2024.

_/s/ Melonie M. Clark_
NOTARY PUBLIC

[Notary Seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 198726, MELONIE M. CLARK, Commission Expires March 11, 2028, GREENE COUNTY]

My Commission Expires