**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BOBBIE ADAMS**                                                                                              **PLAINTIFF**

**v.**                                                                                       **CAUSE NO.:  3:24cv236-KHJ-MTP**

**SHERIFF BRYAN BAILEY, et al.**                                                            **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**NOW COME** Defendants Rankin County, MS, Sheriff Bryan Bailey, and K9 Officer Tony Shack, by and through counsel, and in support of their motion for summary judgment state as follows:

I.  **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiff's [1] Complaint was filed on April 30, 2024, and alleges federal § 1983 and § 1985 claims[1] relating the arrest of Plaintiff Bobbie Adams ("Adams") on or around May 1, 2021. [1] Complaint, ¶¶ 43–55. Specifically, Plaintiff alleges a Fourth Amendment excessive force claim relating to a K9 with the Rankin County Sherriff's Department ("RCSD") biting him on the date of arrest. *Id.*, ¶¶ 79-81. Plaintiff further alleges a § 1985 conspiracy by and between RCSD deputies. *Id.*, ¶¶ 90-95. All official capacity claims have been dismissed. *See* [28] Agreed Order.

The discovery deadline expired on June 16, 2025, *see* [29] CMO, and these Defendants now move for full summary judgment on all claims against them.

---

[1] Plaintiff does not allege any state law claims on the face of his Complaint against any Defendant. To the extent any state law claims are alleged against these Defendants, same would be barred by the one-year statute of limitations under Miss. Code Ann. § 15-1-35 and/or § 11-46-11, and/or the individual capacity Defendants being entitled to immunity pursuant to § 11-46-5 and § 11-46-7.

II.  **STATEMENT OF FACTS**

At or around 10:30 PM on May 1, 2021, Adams sold methamphetamines to a confidential informant ("CI") in or around the parking lot of The Outpost gas station on the corner of Highway 468 and Highway 469 in Rankin County, Mississippi.[2] Shack, accompanied by his K9 unit ("VooDoo"), and Christian Dedmon were the only officers on scene when they attempted to arrest Adams and he initially attempted to flee in his vehicle, then on foot.[3] After having committed a felony in the officers' presence, Adams ran across the highway and hid in a ditch in a wooded area to evade capture.[4]

Because Adams was a fleeing felon, suspected of being armed, and was running to a wooded area at night, Shack removed VooDoo from his patrol vehicle to assist with Adams' capture. But as VooDoo began chasing Adams, Dedmon ran in front of the K9 and was bitten on the arm around 10:32:59 PM.[5] The Monterey Fire Department was dispatched to The Outpost to render medical assistance to Dedmon and Shack placed VooDoo back into his patrol vehicle to assist Dedmon.[6]

After ensuring that Dedmon could assist with finding Adams, VooDoo was again removed from Shack's vehicle, tethered, and began tracking the suspect.[7] Adams was found by VooDoo at or around 10:35:34 PM hiding in a dark, wooded ditch off of Hwy 468.[8] Since

---

[2] [1] Complaint, ¶¶ 43, 52; Exhibit 2, ¶¶ 2-3; Exhibit 5.
[3] Exhibit 2, ¶ 3.
[4] *Id.*, ¶¶ 3, 5.
[5] *Id.*, ¶ 4; Exhibit 1, RC 036; Exhibit 3 at 22:32:59; *see also Id.* at 22:33:31 ("Can you send the fire department to wrap my arm up?").
[6] Exhibit 2, ¶ 5.
[7] *Id.*
[8] *Id.*, ¶ 6; Exhibit 3 at 22:35:34.

2

Shack was unable to handle VooDoo and handcuff Adams at the same time, he waited for Dedmon to arrive before engaging with Adams.[9]

VooDoo bit Adams twice during the next 11 seconds, with the first bite believed to have been on Adams' upper left leg.[10] Shack attempted to release VooDoo's hold but Adams was bitten a second time, on his right, lower leg, when he shifted positions and/or attempted to kick at the K9.[11] Adams was finally released by VooDoo at or around 10:35:45 PM, when Shack used a manual break bar to force a release, and the police officers raised Adams from the ditch and onto the highway.[12] No other force was used on Adams other than these two bites.

Deputy John Lewis arrived on scene at or around 10:39:08 PM and assisted with transporting Adams back to The Outpost.[13] An ambulance was dispatched to The Outpost at 10:40:29 PM and Adams was in the parking lot of The Outpost, awaiting paramedics, by 10:41:41 PM.[14] After receiving medical attention at the scene, Adams was transported to Merit Health Rankin for treatment of "5 SEPARATE LACERATIONS 3 ON THE RIGHT LEG AND 2 ON THE LEFT WHICH REQUIRED A TOTAL OF 15 3-0 INTERRUPTED SUTURES."[15] It was also found that he suffered a Lisfranc dislocation of his left ankle caused by a fall during his flight from police.[16]

III.  **LEGAL PRECEDENT AND ANALYSIS**

---

[9] Exhibit 2, ¶ 6.
[10] Exhibit 1, RC 037.
[11] Exhibit 2, ¶ 7; Exhibit 1, RC 038-039.
[12] Exhibit 2, ¶ 7; Exhibit 3 at 22:35:45.
[13] Exhibit 1, RC 023; Exhibit 3 at 22:39:08.
[14] Exhibit 3 at 22:40:29 & 22:41:41.
[15] Exhibit 4, RC 258.
[16] *Id.*, RC 257 ("HE ALSO FELL INJURED LEFT ANKLE WHICH WAS PLACED IN A SPLINT PRIOR TO ARRIVAL."); RC 270-74 (Reason: FALL).

A.     **<u>Rule 56 Standard of Review</u>.**

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Nueces County*, 589 F. App'x 682, 684 (5th Cir. 2014) (citations omitted). Under Rule 56 standards, the moving party "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).

Mere "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are insufficient to defeat summary judgment. *Coomer v. Mark Roth*, No. 23-10845, 2024 U.S. App. LEXIS 22801, at *3 (5th Cir. Sep. 6, 2024) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (emphasis in original). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

B.     **<u>Shack is entitled to qualified immunity</u>.**

Tony Shack is "entitled to qualified immunity under § 1983 unless (1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was

4

'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (citation omitted). The Court is "free to decide which of the two prongs of the [QI] analysis to address first." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022).

Qualified immunity "protects all public officers from individual liability except those 'who are plainly incompetent or who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 340 (1986). The Court's analysis should consider "only the facts that were knowable to the defendant officers." *White v. Pauly*, 580 U.S. 73, 77 (2017). For a court to determine that an official is not entitled to qualified immunity, it "must find that every reasonable officer would have understood that the alleged conduct violated a clearly established constitutional right." *Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015) (citation omitted).

Adams has the burden under qualified immunity to show that "the unlawfulness of [Shack's] conduct was clearly established at the time it occurred." *Buehler*, 27 F.4th at 981. To meet this burden, Adams "must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Id.* (citations and internal quotations omitted). The Court's qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citation omitted). "[S]pecificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (citation omitted).

Adams "also bear[s] the burden of raising a fact issue" regarding violation of his constitutional rights. *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021). This means that in order to defeat Shack's instant motion, Adams "must rebut the defense by establishing that

5

... genuine issues of material fact exist regarding the reasonableness of [Shack's] conduct according to [clearly established] law." *Kokesh*, 14 F.4th at 392 (citations and internal quotations omitted).

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (citations and internal quotations omitted). "[A]ll claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To establish an excessive force claim under the Fourth Amendment, [Adams] must allege '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Hodge v. Engleman*, 90 F.4th 840, 846-47 (5th Cir. 2024) (citations omitted). Shack does not dispute that VooDoo bit Adams on his left thigh and right calf areas. Therefore, the issue is whether Shack's use of force via a canine was "clearly excessive" and/or "clearly unreasonable." *Hodge*, 90 F.4th at 847.

"Excessive force claims are 'evaluated for objective reasonableness based on the information the officers had when the conduct occurred.'" *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). "The 'excessive' and 'unreasonable' inquiries require the court to exercise 'cautio[n] about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'" *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)). "Reasonableness" is evaluated with "a 'calculus' that allows 'for the fact that police officers are often forced to make split-second judgments

– in circumstances that are tense, uncertain, and rapidly evolving….'" *Hodge*, 90 F.4th at 847 (citations omitted).[17] Accordingly, the *Graham* factors are used to analyze an officer's reasonableness – namely, "the crime's severity, the suspect's threat, and whether the suspect is actively resisting arrest or trying to flee." *Jackson*, 3 F.4th at 186 (citation omitted). A police officer's use of force is constitutionally permissible where two or more of the *Graham* factors are present. *Cooper v. Flaig*, 779 F. App'x 269, 271 (5th Cir. 2019) (citing *Pratt v. Harris County*, 822 F.3d 174, 182 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)).

From a general perspective, "(1) canine deployment is a justified use of force to combat felony crimes; (2) canine deployment is justified in detaining a suspect who is fleeing; and (3) it is reasonable for an officer to treat a fleeing suspect as armed and dangerous." *Hoyle v. City of Hernando*, No. 3:21cv171-NBB-RP, 2022 U.S. Dist. LEXIS 174779, at *8 (N.D. Miss. Sep. 27, 2022) (*affirmed* No. 23-60451, 2024 U.S. App. LEXIS 22473 (5th Cir. Sept. 4, 2024) (citations omitted). In this case, it is uncontested that Adams committed a felony in the officers' presence and that Adams fled from officers when they tried to arrest him. The deployment of VooDoo is thus constitutionally permissive under these facts.

At the time force was used, Adams was a fleeing felon and presumed to be armed and dangerous. The officers and Adams were in an unlit, dark ditch in the woods and Adams intentions were unclear at the time he was discovered by VooDoo. When VooDoo first bit Adams, Shack was in the process of summonsing Dedmon to that location since he could not handle VooDoo and handcuff Adams simultaneously. Shack then began to release VooDoo's

---

[17] *See also Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) ("And [courts] are rightly hesitant to 'second-guess[ ] a police officer's assessment, made on the scene, of the danger presented by a particular situation' from the calm remove of chambers.").

bite on Adams when he moved, changed position, and/or kicked at the K9, thus causing VooDoo to bite his other leg. Shack used a break bar to manually remove the K9's bite and no further force was used on Adams.

Even if a bite occurred after Adams was handcuffed, which is disputed, such action would not be unreasonable under the circumstances. In *Perkins v. Hart*, No. 22-30456, 2023 U.S. App. LEXIS 31734 (5th Cir. Nov. 30, 2023), the plaintiff was standing in her driveway when she was approached by two deputies who were investigating a complaint about riding a dirt bike recklessly without a helmet. *Id*. at *2. The deputies asked Perkins for her driver's license and proof of insurance and, after asking "if the inquiry was racially motivated, Perkins became frustrated and non-compliant." When she refused to comply with the deputies' requests, the deputies attempted to arrest her by "seiz[ing] her arms, forc[ing] er to the ground, ... and then, ... 'lean[ing] on [her] back and neck with their knees and elbows, pull[ing] her hair, and forc[ing] her face against the driveway pavement while wrenching her arms behind her back.'" *Id*. at *2-3. She was eventually handcuffed by Deputy Hart. *Id.* at *3. Then, after she was handcuffed, subdued, and in a prone position, she rolled to her back and began kicking at the deputy. *Id.* at *4. In response, the deputy's hand went to her neck and she yelled, "you're choking me!" *Id.* at *4. Her nephew also yelled, "y'all are choking a lady." *Id.* The Fifth Circuit held that the deputy was entitled to qualified immunity – reversing the district court – because although handcuffed, the plaintiff resumed resisting by kicking at the deputy and the deputy's actions were proportionate to the need for force. *Id.* at *15.

According to dispatch audio recordings, the entire incident – from first bite to Adams being lifted to his feet – lasted a total of 11 seconds. This incident occurred in a dark ditch on the side of a highway, and Adams was a fleeing felon, presumed to be armed and dangerous.

VooDoo was deployed to effectuate the tracking and apprehension of Adams, and no biting occurred after Adams was subdued and compliant. If any biting occurred after Adams was handcuffed, it was either unintended or Adams was not subdued and compliant at the time. For these reasons, the force used by Tony Shack on the night of May 1, 2021, was not excessive by Fourth Amendment standards and he is entitled to qualified immunity in his individual capacity. Moreover, Shack did not violate clearly established law and is entitled to qualified immunity for this separate reason.

### C. **Sheriff Bailey is entitled to qualified immunity**.

Sheriff Bailey cannot be liable on any § 1983 claims under a theory of vicarious liability and/or *respondeat* superior. *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017). And because he did not personally participate in the events that transpired on May 1, 2021, Plaintiff must show that "(1) the [sheriff] failed to supervise or train the [deputies]; (2) a causal connection existed between the failure to supervise or train and the violation of [Plaintiff's] rights; and (3) the failure to supervise or train amounted to deliberate indifference to [Plaintiffs'] constitutional rights." *Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024) (citation omitted).

To proceed past summary judgment on a failure to train or supervise claim against Sheriff Bailey, Plaintiff must present competent summary judgment evidence that "(1) the [Sheriff's] training procedures or supervision were inadequate, (2) the [Sheriff] was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's injury." *Clyce v. Hunt County*, 515 F. App'x 319, 323 (5th Cir. 2013) (citations omitted). "[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Id.*, and

9

"it must have been obvious that that the 'highly predictable consequence' of not supervising [his] officer[s] was that he 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (citation omitted).

The Rankin County Sheriff's Department's training of VooDoo and his K9 handlers was extensive prior to May 1, 2021,[18] and the K9 was re-certified through the United States Police Canine Association in February of 2021.[19] Thus, all training of K9 handlers and VooDoo greatly exceeded Mississippi minimum requirements that existed at the time. And neither Shack nor VooDoo have ever been alleged to have engaged in the unconstitutional use of force in the past. Moreover, Sheriff Bailey implemented a use of force reporting system to be apprised of situations where force was used, which was adhered to in this matter,[20] and Shack's supervisor – Chris Picou – came to the scene on May 1, 2021, to assess the force used by VooDoo on the night in question.[21] There were no findings of impropriety by Shack or Voodoo.

There has been nothing produced in discovery to show that Sheriff Bailey's training or supervision of K9 officers – or deputies in general – was deficient, that Sheriff Bailey acted with deliberate indifference, or that any lack of training or supervision proximately resulted in Plaintiff's injuries. For all of these reasons and because Sheriff Bailey did not violate clearly established law, this Defendant is entitled to qualified immunity and all claims against him should be dismissed with prejudice.

---

[18] Exhibit 6.
[19] *Id.*, RC 047-048.
[20] Exhibit 1, RC 027-028.
[21] Exhibit 3 at 23:01:25.

10

D.      **No *Monell* Claims Against Rankin County**

Similar to Plaintiff's claims against Sheriff Bailey, his claims against Rankin County cannot be premised on any form of respondeat superior and/or vicarious liability, and liability must be based on something more "than the right to control employees, or simple awareness of employees' misconduct." *Cruse v. Brisolara*, No. 1:15cv172-RHW, 2016 U.S. Dist. LEXIS 126422, at *16-17 (S.D. Miss. Sep. 16, 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003)). Instead, a *Monell* claim against Rankin County requires "proof of three elements: a policy maker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 494). And "it is well established that there must be an underlying Constitutional violation for there to be a claim under *Monell.*" *Landry v. Laborde-Lahoz*, 852 Fed. App'x 123, 127 (5th Cir. 2021) (quoting *Taite v. City of Fort Worth Texas*, 681 F. App'x 307, 309 (5th Cir. 2017)).

As explained in detail above, Plaintiff's constitutional rights were never violated. Moreover, Plaintiff has no evidence that the final policymaker for the RCSD – *i.e.*, Sheriff Bailey – personally participated in any alleged constitutional violations or that the RCSD had a custom, policy, or practice of violating a citizen's constitutional rights similar to that alleged in the [1] Complaint. In short, there are no proper *Monell* claims against Rankin County, and it is entitled to summary judgment on any and all claims against it.

E.      **Plaintiff does not have a cognizable § 1985 conspiracy claim**.

To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must allege: "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act

11

in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (citing *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010)). In so doing, the Plaintiff must show that the conspiracy was motivated by "some form of class-based discrimination." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-35, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)); *see also Skinner v. Hinds County*, No. 3:10cv358-DPJ-FKB, 2014 WL 317872, at *10 (S.D. Miss. Jan. 29, 2014) (quoting *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir. 1994) (To support a § 1985(3) conspiracy claim, plaintiff must prove "that the alleged conspiracy was aimed at him based on 'a class-based animus.'").

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Brown v. Wilkinson County Sheriff's Dep't*, No. 5:16cv124-KS-MTP, 2017 WL 1479428, at *4 (S.D. Miss. Apr. 24, 2017) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)); *see Wong v. Stripling,* 881 F.2d 200, 202 (5th Cir. 1989) (plaintiff must prove, inter alia, an overt act in furtherance of the alleged conspiracy to state a cause of action under § 1985(3)). There are no facts, either alleged or provided during discovery, showing that Defendants committed an illegal act on May 1, 2021, in dealing with Adams. There are also no facts, either alleged or provided during discovery, showing that Defendants agreed with anyone to commit an illegal act. Accordingly, Defendants are entitled to summary judgment on any and all conspiracy claims.

Moreover, "[§] 1985(3) requires 'two or more persons' to form a conspiracy. *Howard v. Forrest County*, No. 2:19cv084-KS-MTP, 2020 U.S. Dist. LEXIS 139183, at *29 (S.D. Miss.

Aug. 5, 2020) (quoting 42 U.S.C. § 1985(3)). But "[u]nder § 1985(3), a corporate entity and its employees constitute a 'single legal entity which is incapable of conspiring with itself.'" *Id.* (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (additional citations omitted). Because Plaintiff's § 1985 conspiracy claim is premised on alleged actions by and between members of the Rankin County Sheriff's Department, the claim is barred by the intra-corporate conspiracy doctrine.

IV. **CONCLUSION**

For all of the foregoing reasons, Rankin County, MS, Sheriff Bryan Bailey, and K9 Officer Tony Shack are entitled to judgment in their favor and respectfully request that any and all claims against them be dismissed with prejudice.

**RESPECTFULLY SUBMITTED,** this 30th day of June, 2025.

**RANKIN COUNTY, SHERIFF BRYAN BAILEY, & TONY SHACK  - DEFENDANTS**

BY:    */s/ Jason E. Dare*
          **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:    (601) 987-5307
Facsimile:     (601) 987-5307