IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BOBBIE ADAMS**                                                                               **PLAINTIFF**

**v.**                             **CIVIL ACTION NO. 3:24-cv-236-KHJ-MTP**

**SHERIFF BRYAN BAILEY, ET AL.**                                    **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Bobbie Adams, by and through undersigned counsel, and files this, his Memorandum in Support of Plaintiff's Response to Motion for Summary Judgment. In support thereof, he would show unto the Court the following.

## INTRODUCTION

This case presents quintessential jury questions regarding whether the Defendants, acting under color of law, violated Bobbie Adams's clearly established Fourth Amendment rights. After Adams voluntarily surrendered, was handcuffed, and sitting compliant in a ditch, Defendant Shack released a police K9 to bite and maul him. The attack began well beyond the point of any arguable threat, inflicting grievous injuries. Furthermore, the attack was ordered by Rankin County deputies out of hatred and spite that was not only condoned but rewarded inside the Rankin County Sheriff's Department, operated by Defendant Sheriff Bryan Bailey, its chief policymaker. The Defendants now hope this Honorable Court will allow them to avoid accountability by distorting the facts and hiding behind qualified immunity. But genuine disputes of material fact preclude summary judgment on any of the Plaintiff's claims.

The Defendants' motion should be denied in its entirety.

1

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. A fact is material if its resolution would affect the outcome of the case. *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). In deciding summary judgment, the Court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), (reversing the Fifth Circuit for failing to do so in an excessive force qualified immunity case). Where, as here, competing accounts exist regarding material facts, summary judgment is inappropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" at the summary judgment stage); *see also Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

Genuine disputes are ones in which "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those that "might affect the outcome of the suit under the governing law." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). Summary judgment can only be granted for the Defendants when no reasonable inferences may be drawn from the evidence supporting Mr. Adams's position that would allow a Plaintiff's verdict at trial. *Id.* This case is simply not ripe for summary judgment.

## ARGUMENT

The Defendants make four assertions, to which the Plaintiff will respond in turn:

1) that Defendant Shack is entitled to qualified immunity,
2) that Defendant Bailey is entitled to qualified immunity,
3) that there is no viable Monell liability claim against Rankin County, and

4) that the Plaintiff's Section 1985 conspiracy claim must fail because there was no illegal act taken against the Plaintiff and/or the intracorporeal conspiracy doctrine bars recovery

## I.     Defendant Shack is not entitled to qualified immunity.

Mr. Adams has sworn unequivocally under oath that *after* he had surrendered and been handcuffed, he—in a *non-threatening* manner—sat *compliant* while Defendant Shack unleashed K9 Voodoo. (Adams Dep. Pages 39-40 and 50). The K9 bit and tore at Mr. Adams's legs and feet for approximately 30 seconds, leaving puncture wounds, torn flesh, and multiple fractured and dislocated bones. (Complaint, Docket #1 and Medical Records of Merit Health).

The Fourth Amendment prohibits the use of force that is objectively unreasonable in light of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In the Fifth Circuit, it is clearly established that allowing a law enforcement canine to continue biting a subdued suspect violates the Constitution. There is no need for complex legal analysis to determine whether the facts in this case are close enough to facts in established Fifth Circuit precedent to provide fair warning to law enforcement officers that the complained of actions were violative of constitutional protections. The Fifth Circuit has plainly laid down as bright a line as possible that "permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).

Even if the Court were to look beyond *Cooper*, the claim that the right wasn't clearly established must fail. As the Fifth Circuit held in *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012):

> "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The central concept is that of 'fair warning': The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable

warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir.2004) (internal quotations and citation omitted).

The Fifth Circuit has repeatedly held that applying force to a subdued and compliant arrestee—as Mr. Adams plainly asserts and supports with record evidence happened to him—is violative of the Fourth Amendment. "Here, under Bush's account of the events, she was not resisting arrest or attempting to flee when Detective Galloway forcefully slammed her face into a nearby vehicle during her arrest, thereby causing significant injuries. While the Fourth Amendment's reasonableness test is "not capable of precise definition or mechanical application," the test is clear enough that Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

Here, the Defendants' narrative—that Adams was resisting and the bite only lasted 11 seconds—is directly contradicted by Adams's testimony and medical evidence. This credibility dispute alone mandates denial of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 28, 255 (1986); *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

**II. Defendant Bailey is not entitled to qualified immunity.**

The Plaintiff has asserted a claim against Rankin County Sheriff Bryan Bailey in his individual capacity for allowing a culture of excessive force to exist in the Rankin County Sheriff's Department. This well-documented behavior by Sheriff Bailey, particularly his failure to supervise, inevitably led to the violent attack on Bobbie Adams, as well as others.

The responsibility of a Mississippi sheriff is well established. Under Mississippi statute, "All sheriffs shall be liable for the acts of their deputies…." See Miss. Code Ann. § 19-25-19. Sheriff Bailey argues that in order to prevail, the Plaintiff must show that (1) the [sheriff] failed

to supervise or train the [deputies]; (2) a causal connection existed between the failure to supervise or train and the violation of [Plaintiff's] rights; and (3) the failure to supervise or train amounted to deliberate indifference to [Plaintiffs'] constitutional rights. It could not be clearer that Defendant Sheriff Bailey failed to train and supervise his deputies.

The instant case is, in an important way, very different from other failure-to-train or failure-to-supervise cases. Typically, a jury must decide whether "it at least must have been obvious that 'the highly predictable consequence' of not supervising its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000). Adhering strictly to this standard for purposes of summary judgment would ignore the reality: it's not that the consequence of failing to train and supervise was "highly predictable;" the plain fact is that it happened and was highly coordinated within the department.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). Unfortunately, the history of the use of excessive force by the Rankin County Sheriff's Department under Defendant Bailey's leadership is already judicially established fact. (See generally *U.S.A. v. Dedmon, et al*, Cause No. 3:23-cr-063-TSL-LGI and *U.S.A. v. Middleton, et al*, Cause No. 3:23-cr-062-TSL-LGI.) While Defendant Shack was not a criminal defendant in either of those actions, Defendant Dedmon was a criminal defendant in both. As has already been established, multiple members of the Rankin County Sheriff's Department organized a group known inside the Department as the "Goon Squad," and had challenge coins minted boasting the Sheriff's seal:

5



The Goon Squad—of which Defendant Dedmon was an active member—included multiple high-ranking employees of Defendant Bailey, *including Bailey's chief deputy*. The Goon Squad operated for multiple years within the Rankin County Sheriff's Department, making plainly evident Defendant Bailey's failure to train and supervise his employees. The fact that Defendant Bailey continually employed Defendant Dedmon is perhaps the most glaring instance of a lack of training and supervision, as Dedmon is currently serving four decades in the federal penitentiary for depriving individuals of their civil rights while employed by Defendant Bailey. In all, Defendant Bailey's Goon Squad employees were sentenced to serve over 122 years for depriving Americans of their civil rights while acting as Defendant Bailey's employees; and that does not include their state level sentences.

Further, a causal connection exists between the failure to supervise and the Plaintiff's injuries. Using excessive force was the *raison d'être* for Defendant Bailey's Department's Goon Squad, and Defendant Dedmon was an active participant. Here, Dedmon and Shack violated the Plaintiff's rights the same way Rankin County Sheriff's deputies violated the rights of others—through the use of excessive force. The causal connection between the acceptance of the use of excessive force within the Rankin County Sheriff's Department—which a jury may find evidenced a failure to supervise—and the injuries suffered by the Plaintiff are clear.

The third prong deals with whether the failure to supervise amounted to deliberate indifference. Deliberate indifference occurs when "a municipal actor disregard[s] a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011). "To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program." *Porter*, 659 F.3d at 447 (cleaned up). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). We certainly have that here, because as mentioned above the Goon Squad's reason for existence was to violate constitution protections.

Had Defendant Bailey trained and supervised his deputies, he would have uncovered the Goon Squad's tactics and put a stop to them. Bailey's own excuse is that he was simply unaware that such behavior was rampant within his own department, which proves the lack of training and supervision. Whether or not Bailey is being truthful in his denial is a matter for a jury to

determine. The jury in this case certainly has ample proof from the judicial record that Defendant Bailey failed to train and supervise, that the failure caused Mr. Adams' injuries, and that Defendant Bailey was deliberately indifferent to Mr. Adams' constitutional rights.

Depositions from other actions listed below verify that position of Defendant Bailey's attempts to evade accountability.  The Plaintiff's Memorandum in *Jenkins, et al v. Rankin County, Mississippi et al*, Cause No. 3:23-cv-374-DPJ-ASH Docket #s 132 and 151 lists those various acts that conclude the lack of accountability in the Rankin County Sheriff's Office and by this Defendant Bailey.

"As stated in response to another one of Defendant Bailey's attempts to evade accountability:

> Undoubtedly, defendant Bailey knew about the lawlessness in the Sheriff's Department and didn't care until everybody else found out. The following fourteen (14) facts fully support the plaintiffs' position in this regard:
>
> *1.* Defendant Middleton's shift called themselves the "Goon Squad" because they were willing to use excessive force and not report it. ***Docket # 151 Attachments 3 and 4 Exhibit 4 and 7 at pgs. 73, 99-100 (Godfrey Deposition)***;
>
> *2.* The existence of the Goon Squad was a well-known fact - - Middleton gave him a coin and he assumed that Bailey had one because they were being passed around. ***Docket #151 Attachments 3 and 4 Exhibit 4 Exhibit 7 at 73-75 (Godfrey deposition)***;
>
> 3. Dwayne Thornton who was the Captain of Patrol, and the direct supervisor of Middleton, had a Goon Squad coin. ***Docket #132 Attachment 2 Exhibit 2 at Pages 29, 46 (Thornton Deposition)***;
>
> 4. It was assumed that Bailey had a coin because Middleton was freely passing them around. ***Docket # 151 Attachments 3 and 4 Exhibit 4 and 7 at pgs. 75, 99-100 (Godfrey Deposition)***;

8

5. BWCs were not to be turned on when of the Rankin County deputies were working with defendant Dedmon. Middleton dep at 38, 41; ***Docket # 151 Attachments 1 & 2 Exhibit 5 at pgs. 38, 41 (Middleton Deposition)***;

6. Dedmon would let Bailey know what he was doing, ***Docket# 151 Attachments 1 & 2 Exhibit 5 at pgs. 89 (Middleton Deposition)***;

7. Bailey was aware of Dedmon's conduct Id at 86 ***Docket# 151 Attachments 1 & 2 Exhibit 5 at pg. 86 (Middleton Deposition)***;

8. Dedmon was good friends with Bailey, Id at 84-85 ***Docket# 151 Attachments 1 & 2 Exhibit 5 at pg. 89 (Middleton Deposition)***;

9. Dedmon was hyperactive, Id at 45; ***Docket# 151 Attachment 1 Exhibit 5 at pg. 45 (Middleton Deposition)***;

10. Dedmon was violent with people, Id at 46, 49 ***Docket# 151 Attachment 1 Exhibit 5 at pgs. 46, 49 (Middleton Deposition)***;

11. Middleton had a fear of backlash if he reported what Dedmon was doing because of the relationship between Bailey and Dedmon, Id at 95 ***Docket# 151 Attachment 1 Exhibit 5 at pg. 95, (Middleton Deposition)***;

12. Everybody knew of the close relationship between Bailey and Dedmon, Id at 96-97; ***Docket# 151 Attachments 1 & 2 Exhibit 5 at pgs. 96-97, (Middleton Deposition)***;

13. There was a culture of violence that existed in the Sheriff's Dept, Id at 51 ***Docket# 151 Attachment 1 Exhibit 5 at pg. 51, (Middleton Deposition)***;

14. Based on my review of the records, sworn testimony, and supporting materials related to this case, the events of January 24, 2023, and the deliberate efforts to conceal what occurred reveal not just isolated misconduct, but a deeply rooted culture of misconduct and corruption within the Rankin County Sheriff's Office. The actions of the involved deputies, including their warrantless entries, repeated use of excessive force, racial abuses, and the fabrication and destruction of evidence-was not only unlawful but brazenly coordinated. These actions could not have occurred in a vacuum.

It is inconceivable to believe that Sheriff Bryan Bailey was unaware of the repeated and egregious misconduct carried out by

>members of his department, particularly by a group of officers who openly referred to themselves as the "Goon Squad" and operated with apparent impunity. If Sheriff Bailey did in fact know and failed to intervene, he bears direct responsibility for allowing this behavior to continue unchecked. If, on the other hand, he truly did not know, this raises serious concerns about his ability to supervise, manage, or maintain any reasonable level of accountability within his agency."

(*Jenkins, et al v. Rankin County, Mississippi et al*, Cause No. 3:23-cv-374-DPJ-ASH, (Dkt. 146), "Plaintiff's Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment of Defendant Bailey Premised on Qualified Immunity.")

The injuries were caused in part by Defendant Dedmon's participation in the attack.

### III. Monell Liability Exists for Rankin County

For the reasons set forth above in section II regarding Defendant Bailey's individual liability, a jury may find that Rankin County is liable to the Plaintiff under *Monell*. In order to hold a county liable under Monell, a plaintiff must meet three elements: "[1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

Defendant Bailey is the Sheriff of Rankin County. As Sheriff, he has the final authority to set policy for Rankin County regarding its law enforcement. "Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996), citing *Huddleston v. Shirley*, 787 F.Supp. 109, 112 (N.D.Miss.1992); Miss. Code Ann. § 19–25–1, *et seq*.

As to whether an official policy existed, a written policy is not required. The policy may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc)). The Plaintiff reincorporates here the arguments set forth above in Section II regarding the individual liability of Defendant Bailey.

Clearly, the well-settled practice of using excessive force evidenced by the operations of the Rankin County Goon Squad was the moving force behind the constitutional rights violation suffered by Mr. Adams. Plaintiff again reincorporates here the arguments set forth above in Section II regarding Defendant Bailey's individual liability.

### IV. Civil Conspiracy Claim Should Proceed

The Defendants argue that because Adams's conspiracy claim is based on actions by and between members of the Rankin County Sheriff's Department, the claim is barred by the intra-corporate conspiracy doctrine. While in the Fifth Circuit this doctrine does bar Section 1985(3) conspiracy claims against officers or employees of "a single legal entity which is incapable of conspiring with itself," the Fifth Circuit has recognized an exception "where corporate employees act for their own personal purposes." *Benningfield v. City of Houston*, 157 F.3d 369, 378-79 (5th Cir. 1998).

Whether the intra-corporate conspiracy doctrine applies in Adams's case is a jury question. As set forth above in Sections I through III, the Plaintiff has proven official acts and policy by the Defendants that worked to violate Adams's constitutional rights in violation of 42 U.S.C. Section 1983. If a jury agrees, then Rankin County is liable, and none of the Defendants are entitled to qualified immunity. In that case, the intra-corporate conspiracy doctrine would in fact bar recovery for conspiracy under Section 1985.

However, the Defendants cannot have it both ways. If it is determined Shack and Dedmon acted with their own personal purpose separate from that of Bailey and Rankin County, then Adams's Section 1985 conspiracy claim must be allowed to proceed under the personal-purpose exception to the intra-conspiracy doctrine. Indeed, sufficient facts exist to demonstrate a conspiracy between Dedmon and Shack.

"Section 1985(3) prohibits conspiracies to deprive any person equal protection of the laws." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 389 (5th Cir. 2017). For a plaintiff to prevail on a claim for damages under 42 U.S.C. § 1985, he "must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).

Here, as set forth above, Defendants Shack and Dedmon conspired with one another to use the dog to attack the Plaintiff and to cover up the evidence of the attack. These Defendants agreed with one another to inflict the wrongs and injuries described herein upon the Plaintiff through a single plan, the essential nature and general scope of which was known to each Defendant present at the scene of the attack.

Officer Shack made no report in this case whatsoever. The only report was filed by Dedmon, the former officer of Rankin County who is a convicted felon having pled guilty to multiple instances of violating American citizens civil rights. Therefore, a jury could find a conspiracy occurred to falsify or limit reports that should have reflected the true actions that occurred.

As to the second prong, the purpose of that conspiracy was to deprive the Plaintiff of the protection of the Fourth Amendment. Third, Shack and Dedmon released the dog upon the Plaintiff and worked with each other to hide and obfuscate the fact that the Plaintiff was already in custody and compliant when the dog attack happened. And finally, their actions caused the numerous injuries herein described.

In addition to the elements set forth above, a plaintiff in the Fifth Circuit must also allege that a 42 U.S.C. § 1985 conspiracy is racially motivated. *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). Here, ample facts exist for a jury to determine Dedmon and Shack were motivated by racial animus. First, the Plaintiff is Black, and Defendants Shack and Dedmon are White. Further, this dog attack occurred at the hands of at least one Goon Squad member— Dedmon. As described above, the Goon Squad has utilized racist symbols such as a Confederate flag and noose internally as recently as within the past decade. Additionally, a Goon Squad member recently pled guilty to setting in motion a separate conspiracy which had as its means and its objective using excessive force and violence to strike terror into the hearts of Black American citizens so that they would leave a White neighborhood. Defendant Dedmon has used excessive force specifically to terrorize Black men because they were Black and has used racist epithets while doing so. Further, the use of a police dog by White law enforcement officers to attack Black Americans is also a tactic with a long associated with white supremacists and was a driving force for the Defendants in this case.

To the extent Rankin County and Bailey argue that Shack and Dedmon were not operating with the imprimatur of Bailey's Rankin County Sheriff's Department in subjecting Adams to this horrible attack, or that they were not operating in accordance with official policy promulgated by Bailey, then Shack and Dedmon are certainly capable of conspiring under

13

Section 1985. If, however, a jury were to determine that Shack and Dedmon *were* acting in accordance with Rankin County policy, then the Plaintiff admits that the intra-corporate conspiracy doctrine would bar recovery for conspiracy under Section 1985(3). Regardless, this is a matter for the jury to decide.

### V. Punitive Damages Are Warranted

The conduct alleged—releasing a K9 to attack a handcuffed, compliant arrestee and conspiring to conceal it—is the epitome of reckless and callous disregard for constitutional rights. Punitive damages are appropriate where defendants act with "evil motive or intent, or with reckless or callous indifference." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A jury could reasonably award punitive damages here.

### CONCLUSION

Material factual disputes abound regarding whether Adams was resisting, the duration and severity of the K9 attack, and the existence of county policies condoning excessive force. The Court should deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

/s/ Bobby Moak
Attorney for Plaintiff
MSB 9915

---

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

1. Whether Adams was handcuffed and compliant before K9 deployment.
2. Whether Adams resisted or attempted to kick VooDoo.
3. Duration of K9 bite: Defendants say 11 seconds; Adams says ~30 seconds.
4. Severity of injuries: multiple fractures, dislocations, and deep punctures.
5. Existence of Rankin County policies/customs fostering excessive force.
6. Whether deputies conspired to conceal unconstitutional conduct.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Admit arrest but deny resistance at time of K9 deployment. (Adams Dep. 76:12–77:4)
2. Deny that Adams kicked VooDoo. (Adams Dep. 79:8–80:3)

3. Dispute bite duration: Adams testifies ~30 seconds.
4. Dispute Rankin County's alleged training/supervision adequacy.
5. Deny lack of evidence supporting Monell and conspiracy claims.

---

## CERTIFICATE OF SERVICE

     I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification to all counsel of record.

This the 18th day of July, 2025.


/s/ Bobby Moak
Attorney for Plaintiff
MSB 9915