**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BOBBIE ADAMS**                                                                                                                     **PLAINTIFF**

**v.**                                              **CAUSE NO.:  3:24cv236-KHJ-MTP**

**SHERIFF BRYAN BAILEY, et al.**                                                   **DEFENDANTS**

**REPLY TO PLAINTIFF'S [50] RESPONSE TO**
**DEFENDANTS' [47] MOTION FOR SUMMARY JUDGMENT**

**NOW COME** Defendants Rankin County, Sheriff Bryan Bailey, and K9 Officer Tony Shack, by and through counsel, and state as follows in support of their [47] Motion for Summary Judgment:

1) **<u>Shack is entitled to qualified immunity</u>.**

Plaintiff devotes very little of his [51] Memorandum towards the facts surrounding his arrest on May 1, 2021. *See Id.*, pg. 3. But the limited factual allegations in his [51] Memorandum are contradicted by Plaintiff's sworn deposition testimony.

It is uncontested that Plaintiff committed "the crime(s) of **Sale of two (2) grams or more but less than ten (10) grams of Methamphetamine, a Scheduled II Controlled Substance**" on May 1, 2021, as he has "entered a plea of guilty to said crime(s)" and has been sentenced. *See* Exhibit [47-5] (emphasis in original). After the sale, Plaintiff entered his vehicle that was backed into a parking spot at The Outpost gas station and shut the door, then was blocked in by two law enforcement vehicles. Exhibit [52-1], pg. 32.[1] He reached under the front seat to remove his slippers and exited the vehicle to flee from law

---

[1] Deposition page number references are those assigned on the original deposition, not by Pacer.

enforcement. *Id.* pgs. 31-32. Plaintiff ran across the street and hid in a ditch that was approximately seven to ten feet deep. *Id.*, pg. 46. It was so dark in the ditch that Plaintiff could not identify the officers involved with his arrest. *Id.*, pg. 30 ("It was completely dark….") & pg. 69.

According to Plaintiff, an unidentified officer jumped into the ditch and handcuffed him in front of his body while he was still seated. *Id.*, pg. 68. When VooDoo and Shack came down the 7- to 10-foot embankment, Shack released his hold on the leash and the K9 bit Plaintiff on his left foot. *Id.*, pgs. 53-54. No one gave the K9 any commands to bite Plaintiff. *Id.*, pg. 59. One of the officers "tried to get the dog off [Plaintiff] and couldn't get him off me. And that dog turned around and got on [*i.e.*, started biting] [the officer]. And they started hitting [the K9] with the thing [believed to be a flashlight]." *Id.*, pg. 50. Plaintiff believed that the K9 bit Dedmon on the hand. *Id.*, pg. 49. He testified that approximately 30 seconds elapsed between the time VooDoo first bit him and the time he was being pulled out of the ditch. *Id.*, pgs. 60-62. At no point did any of the officers hit, kick, or tase Plaintiff. *Id.*, pg. 113.[2] And it is admitted that Plaintiff was immediately treated for dog bites as soon as he was removed from the ditch. *Id.*, pg. 72.

Even assuming Plaintiff's version of the facts as true, which the Court must during its summary judgment analysis, Shack is still entitled to qualified immunity. It is uncontested

---

[2] Q. The folks up at the Outpost, whether it be medical, whether it be the EMTs, or the deputies up there, the separate deputies, they do anything to you? Like, once you got up to the Outpost, did anybody hit you, kick you, or do anything wrong to you?
A. No. …
Q. While you were down in the ditch, none of the deputies hit or kicked you at all, did they?
A. No, sir.
Q. So they didn't tase you, right?
A. No, sir.

that Adams committed a felony and fled on foot, at night, into a wooded area where he hid in a 7- to 10-foot-deep ditch. Adams was presumed to be armed as he had reached under the car seat before he fled from the officers and, in Shack's experience, "many suspects who sell illegal narcotics possess firearms." Exhibit [47-2], ¶ 3. Accordingly, the release of VooDoo to assist with detaining Adams did not violate clearly established Fourth Amendment precedent. *See Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018).

Although disputed, the Court must assume for the purpose of this summary judgment motion that Adams was handcuffed in front of his body and seated when the first bite occurred. But there is no summary judgment evidence that Shack had any knowledge that Adams was detained when he descended into the 7- to 10-foot-deep ditch that night. *White v. Pauly*, 580 U.S. 73, 76-77 (2017) (Holding that in a qualified immunity analysis, "the Court considers only the facts that were knowable to the defendant officers."). Shack believed that he and Christian Dedmon were the only officers on scene and believed that Dedmon was following him and VooDoo. Exhibit [47-2], ¶ 6. And no officer announced that the suspect was detained. *Id.*; [47-3].

There is also no summary judgment evidence that Shack intended for VooDoo to bite Adams. Plaintiff testified that Shack released VooDoo's leash as he descended into the 7- to 10-foot-deep ditch that night. Exhibit [51-1], pg. 53. At no point did Plaintiff hear or see any commands from Shack or Dedmon instructing VooDoo to bite. *Id.*, pgs. 58-59. And once VooDoo began biting Adams, the officers "tried to get the dog off [him]" but could not do so initially. *Id.*, pg. 50. Then, according to Plaintiff, VooDoo turned and started biting Dedmon on the hand as the officers tried to disengage the K9 from Plaintiff. *Id.* Once VooDoo started biting Dedmon, Plaintiff claims that the officer then hit the K9 with a flashlight to finally stop

3

all biting. *Id.* According to Adams, the entire incident lasted less than 30 seconds. *Id.*, pg. 61 ("The time I'm getting bit [to] the time I'm getting out the ditch was about 30 seconds.").

Even under Plaintiff's version of facts, there is no summary judgment evidence that any bites were an intentional use of K9 force. Since "the unintended use of canine force" does not violate clearly established Fourth Amendment rights, *Sligh v. City of Conroe*, 87 F.4th 290, 299 n.2 (5th Cir. 2023), Shack is entitled to qualified immunity on all claims against him.

Finally, the only summary judgment evidence regarding the cause of Adams' Lisfranc dislocation of his left ankle comes from his medical records, Exhibit [47-4], which show that the orthopedic injury resulted from a fall. Exhibit [47-4], RC 257 ("HE ALSO FELL INJURED LEFT ANKLE WHICH WAS PLACED IN A SPLINT PRIOR TO ARRIVAL."); RC 270-74 (Reason: FALL). Because Plaintiff failed to meet his burden of producing evidence that his orthopedic injury "resulted directly and only from a use of force that was clearly excessive," summary judgment is proper on that portion of his claim. *Hodge v. Engleman*, 90 F.4th 840, 846-47 (5th Cir. 2024).

2) **Sheriff Bailey is entitled to qualified immunity.**

Plaintiff admits that his claim against Sheriff Bailey is for an alleged failure to train and/or supervise, and alleges in opposition to summary judgment that the existence of an alleged Goon Squad creates a triable issue of fact. For all of the following reasons, he is wrong.

Plaintiff argues that "[a]ll sheriffs shall be liable for the acts of their deputies." [51] Memorandum, pg. 4 (citing Miss. Code Ann. § 19-25-25). But Plaintiff only alleges a federal § 1983 claim against Sheriff Bailey and any theory of vicarious lability is barred. *See Henley v. Edlemon*, 297 F.3d 427, 430 n.6 (5th Cir. 2002) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

The factual allegations at the heart of Plaintiff's claim against Sheriff Bailey are false. The Goon Squad was not what has been portrayed to the public, but instead "was a nickname that Jeffrey Middleton's squad had. It's just a name of their night shift operation." Exhibit [51-3], pg. 73. Middleton had coins made in the Fall of 2022 and passed them around to some people, *Id.*, pgs. 73-76, but no one has testified that the existence of the Goon Squad was common knowledge. *Id.*, pg. 77. Christian Dedmon did not even know the Goon Squad existed until he was in jail in the Summer of 2023. *Dedmon Deposition* (**Exhibit 1**). Former Chief Deputy Dwayne Thorton did not know of the existence of the Goon Squad until the challenge coin was referenced in the media in the Spring of 2023. Exhibit [51-5], pg. 46. The fact that he had a challenge coin on one of his shelves "surprised" him as he "didn't know it was up there." *Id.* After Thornton realized there was a Goon Squad coin in his office, he "tossed it in the trash because [he] didn't want anything to do with it or much less it being in [his] office." *Id.*, pg. 47.

The only "facts" alleged in Plaintiff's [51] Memorandum are a regurgitation of an "expert" report from another federal case. *Id.*, pgs. 8-10. No expert was disclosed by Plaintiff in this cause of action, nor did he disclose that Steve Godfrey, Dwayne Thornton, or Jeffrey Middleton may testify as witnesses in response to interrogatories, **Exhibit 2,**[3] or in prediscovery disclosures. **Exhibit 3**. Accordingly, none of these witness testimony or statements should be considered in response to Sheriff Bailey's summary judgment motion pursuant to Fed. R. Civ. P. 37(c)(1). *See United States ex rel. TVA v. Easements & Rights-of-Way over 3.94 Acres of Land*, 701 F. Supp. 3d 494, 498 (N.D. Miss. 2023).

---

[3] Plaintiff failed to sign his interrogatory responses in compliance with Fed. R. Civ. P. 33(b)(5) or supplement the responses.

Even if these witness statements were considered by the Court, they would not be sufficient to defeat summary judgment in favor of Sheriff Bailey. To survive summary judgment on a failure to train or supervise claim, Plaintiff has the burden of creating a triable fact issue "that (1) the supervisor either failed to supervise or train the subordinate [employee]; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights[;] and (3) the failure to train or supervise amounts to deliberate indifference." *Kemp v. Powers*, No. 25-30024, 2025 U.S. App. LEXIS 16912, at *14 (5th Cir. July 9, 2025) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023); *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017)). Deliberate indifference can be shown by a "pattern of similar constitutional violations by untrained employees," *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018), but the pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Kemp*, 2025 U.S. App. LEXIS at *14 (quoting *Davidson*, 848 F.3d at 396; *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). And "[a] pattern requires similarity, specificity, and sufficiently numerous *prior* incidents." *Id.* (quoting *Davidson*, 848 F.3d at 396) (emphasis added).

The incident at issue in this litigation occurred on May 1, 2021. Plaintiff alleges that the existence of the Goon Squad creates a pattern attributable to Sheriff Bailey. But Sheriff Bailey did not hear of the Goon Squad until June of 2023, **Exhibit 4**, and neither the moniker nor the challenge coin were created until the Fall of 2022. Exhibit [51-3], pgs. 73-76. Moreover, the criminal cases alleged by Plaintiff – *i.e.*, *U.S.A. v. Dedmon, et al*, Cause No. 3:23-cr-063-TSL-LGI and *U.S.A. v. Middleton, et al*, Cause No. 3:23-cr-062-TSL-LGI, [51]

Memorandum, pg. 5 – relate to two incidents that occurred in December of 2022 and January of 2023. Accordingly, all facts and/or incidents alleged by Plaintiff occurred **after** the incident at issue and are insufficient to prove deliberate indifference on the part of Sheriff Bailey.

Plaintiff also does not provide any facts related to these subsequent incidents to show that they are sufficiently similar to the facts of this May 2021 incident. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skinner v. Hinds County*, No. 3:10-cv-358-DPJ-FKB, 2011 U.S. Dist. LEXIS 112724, at *5 (S.D. Miss. Sep. 29, 2011) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010)). And "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived and it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put fresh on its bones." *Nida v. Tactical Force, LLC*, No. 1:23-cv-365-TBM-RPM, 2025 U.S. Dist. LEXIS 60234, at *7 (S.D. Miss. Mar. 31, 2025) (citations omitted). Plaintiff makes no attempt to meet the sufficient similarity prong of a pattern claim and the Court is not required to help him meet his burden of proof.

Plaintiff also makes no argument about the actual training and supervision of deputies at the Rankin County Sheriff's Department prior to May of 2021. Because the training and supervision of deputies, as shown in the [47] Motion and [48] Memorandum, was constitutionally permissive and because Plaintiff has not presented any evidence of a prior pattern that would have alerted Sheriff Bailey to a need for additional training or supervision, this Defendant is entitled to qualified immunity and respectfully requests that

this Court grant him summary judgment and dismiss any and all claims against him with prejudice.

3)      **Rankin County is entitled to summary judgment.**

Even though Rankin County cannot assert the defense of qualified immunity, the Court's analysis of Plaintiffs' *Monell* claims against Rankin County would be the same as its analysis of the failure to train and supervise claims against Sheriff Bailey, as the final policymaker for the Rankin County Sheriff's Department. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). For all reasons in its [47] Motion / [48] Memorandum and the legal precedent and analysis *supra*, Rankin County is entitled to summary judgment.

4)      **Defendants are entitled to summary judgment on Plaintiff's § 1985(3) conspiracy claim.**

Plaintiff first argues that the intra-corporate conspiracy doctrine should not apply to his § 1985(3) claim because the "Fifth Circuit has recognized an exception 'where corporate employees act for their own personal purposes.'" [51] Memorandum, pg. 11 (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378-79 (5th Cir. 1998)). Yet Plaintiff provides no summary judgment evidence of any motive by any of the Defendants. It is not contested for the purpose of Defendant's [47] Motion that Shack and Dedmon were acting within the course and scope of their employment with Rankin County. *See* [1] Complaint, ¶ 7 ("At all times material to this Complaint, Defendants were acting under the color of law, and/or under the color of the statutes, customs, ordinances, and usage of the State of Mississippi and/or their respective municipalities."). Accordingly, the personal purpose exception does not apply. *Zapata v. Howze*, No. 1:24-cv-00610-SH, 2025 U.S. Dist. LEXIS 26260, at *15 (W.D. Tex. Feb. 13, 2025) (citations omitted) ("Even if Defendants were acting out of spite toward

Zapata or to further their own careers, they were acting within the scope of their employment for Hays County in that alleged conspiracy, so the exception does not apply.").

Additionally, Plaintiff offers no competent summary judgment evidence of a conspiracy. His only allegation is that Shack "made no report in this case whatsoever," which Plaintiff and his counsel know to be false. *See* **Exhibit 5**.

Finally, Plaintiff offers no competent summary judgment evidence that the purpose of any conspiracy stemmed from a class-based animus. Defendants concede that Plaintiff is black, and the Defendant officers are white. But this fact alone is insufficient to support a § 1985(3) racially discriminatory conspiracy. *Jackson v. Cox*, 540 F.2d 209, 210 (5th Cir. 1976).

Plaintiff argues that Dedmon was a member of the Goon Squad. But the only summary judgment evidence before this Court is that Dedmon did not know the Goon Squad existed prior to the Summer of 2023. *See* **Exhibit 1**. Plaintiff goes on to allege, without any factual support, that (1) "the Goon Squad has utilized racist symbols such as a Confederate flag and noose internally as recently as within the past decade;" (2) "Defendant Dedmon has used excessive force specifically to terrorize Black men because they were Black and has used racist epithets while doing so;" and (3) "the use of a police dog by White law enforcement officers to attack Black Americans is also a tactic with a long associated with (sic) white supremacists…." [51] Memorandum, pg. 13. Nowhere has Plaintiff supported these false and baseless allegations with competent summary judgment evidence, which is dispositive itself. But there are also no allegations that Shack or any officers with the Rankin County Sheriff's Department who arrived on scene after Plaintiff's arrest either knew of, condoned, or participated in any alleged criminally activity reflected in *U.S.A. v. Dedmon, et al*, Cause No. 3:23-cr-063-TSL-LGI and *U.S.A. v. Middleton, et al*, Cause No. 3:23-cr-062-TSL-LGI. And none

of the former officers involved in these criminal cases were charged with, pleaded guilty to, or were sentenced based on any hate crime pursuant to 18 U.S.C. § 249.

At this summary judgment stage, Plaintiff is required to come forward with actual evidence in support of his conspiracy allegations. He has wholly failed to do so. For this reason and because Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine, any and all § 1985(3) claims in this litigation should be dismissed.

5) **CONCLUSION**

Plaintiff has failed to overcome Shack's defense of qualified immunity in response to his motion for summary judgment. Whether under a failure to train or supervise theory of liability, Plaintiff has failed to meet his burden to overcome summary judgment as requested by Rankin County and Sheriff Bailey. And Plaintiff has failed to come forward with any summary judgment evidence in support of his § 1985(3) conspiracy claim. For all of the foregoing reasons, including all legal precedent and analysis in their [47] Motion and [48] Memorandum, Rankin County, Sheriff Bryan Bailey, and K9 Officer Tony Shack are entitled to judgment in their favor and respectfully request that any and all claims against them be dismissed with prejudice.

**RESPECTFULLY SUBMITTED,** this 25th day of July, 2025.

> **RANKIN COUNTY, SHERIFF BRYAN BAILEY, & TONY SHACK   - DEFENDANTS**
>
> **BY:**   */s/ Jason E. Dare*
>   **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:    (601) 987-5307
Facsimile:     (601) 987-5307

11