UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BOBBIE ADAMS                                                      PLAINTIFF

V.                              CIVIL ACTION NO. 3:24-CV-236-KHJ-MTP

SHERIFF BRYAN BAILEY, et al.                                    DEFENDANTS

ORDER

Before the Court is Defendants' [47] Motion for Summary Judgment. For the reasons stated below, the Court grants in part and denies in part the [47] Motion.

I.      Background

This is a Section 1983 case about a drug sale, a fleeing suspect, and an alleged Fourth Amendment violation involving a police dog named "VooDoo."

In May 2021, Plaintiff Bobbie Adams ("Adams") sold drugs to a confidential informant at a gas station in Rankin County, Mississippi. Police Report [47-1] at 1; *See* State Court Order of Sentence [47-5]. Near the gas station, Defendants Christian Dedmon ("Dedmon") and K9 Officer Tony Shack ("Shack") observed the transaction from separate vehicles. [47-1] at 1. Shack had VooDoo, the police dog, in his vehicle. Shack Aff. [47-2] ¶¶ 2–3.

After the exchange, Dedmon and "other marked deputies" pulled into the gas station to arrest Adams. [47-1] at 1. Adams did not surrender. He first tried to flee in his car, but the police vehicles blocked his exit. Use of Force Report [52-5] at 2; Adams Dep. [51-1] at 33. So he decided to flee on foot. [51-1] at 33. Adams reached

down to take off his Nike slides before exiting his vehicle. *Id.* at 32–33. He then ran, barefoot, from the gas station to a wooded area across the highway. *Id.*; [47-2] ¶ 5.

The police noted the fleeing suspect on dispatch radio at 10:32 p.m. Dispatch Audio [47-3] at 3:58–4:01 ("we got one running on foot"). At this point, Shack deployed VooDoo. [47-1] at 1. Shack did so because (1) Adams committed a felony in front of the officers, (2) he assumed Adams had a weapon because those "who sell illegal narcotics possess firearms," and (3) Adams ran into a wooded area at night. [47-2] ¶ 3; [52-5] at 2. But VooDoo got off to a rough start. Around 10:33 p.m., VooDoo bit one of his own—Dedmon—on the arm. [47-2] ¶ 4; [47-3] at 4:56–5:02 ("Can you send [the fire department] . . . VooDoo bit me"). So Shack put VooDoo back in his patrol vehicle until Dedmon could continue the pursuit. [47-2] ¶¶ 4–5. Meanwhile, Adams escaped the gas station and hid in a seven-to-ten-foot ditch across the highway. [51-1] at 36, 46. Once Shack confirmed Dedmon could continue, he removed VooDoo from his vehicle, tethered him with a leash, and resumed the chase. [47-2] ¶¶ 4–5.

The parties dispute what happened next. Shack and Dedmon say VooDoo found Adams at 10:35 p.m. *Id.* ¶ 6; *see also* [51-1] at 34. When VooDoo found Adams, Shack summoned Dedmon on his radio. [47-3] at 6:20–6:37 ("Christian come to me"). Shack needed Dedmon to join him because "[n]o other deputies had announced arriving on scene by that time and [Shack] required Dedmon's assistance since [Shack] could not handcuff Adams and handle VooDoo at the same time." [47-2] ¶ 6. Shack claims VooDoo had hold of Adams's leg while Dedmon tried

2

to handcuff him. *Id.* ¶ 7. VooDoo then bit Adams's other leg because Adams "changed positions and appeared to kick [VooDoo]." *Id.*; *see also* [52-5] at 2. VooDoo eventually released Adams when Shack used a break bar and lifted Adams to his feet. [47-2] ¶ 7. On this account, VooDoo bit Adams twice within roughly eleven seconds. *Id.* (citing [47-3] at 6:40–6:54 (dispatch announcement "one in custody")).

Adams tells a different story. He claims he turned himself in to a third Rankin County officer—not Shack or Dedmon—before VooDoo found him. [51-1] at 38–39. This third officer, a young white man, handcuffed Adams while he was sitting in the ditch. *Id.* at 51-53. When Shack and VooDoo entered the ditch, Adams was handcuffed and compliant. *Id.* at 52, 68. As Shack descended the embankment, he dropped VooDoo's leash. *Id.* at 54. VooDoo then attacked Adams while the three officers watched. *Id.* at 102, 104. Adams says the officers let VooDoo maul him for about thirty seconds. *Id.* at 61–62. And Adams insists he did not hit or kick VooDoo during this altercation. *Id.* at 82. Eventually, Dedmon got the dog off Adams by hitting it with a flashlight. *Id.* at 63–64. Adams concedes that none of the officers hit, kicked, or tased him. *Id.* at 114–15. But he claims the officers allowed VooDoo to maul him because of racial animus because they used racist and derogatory language during the encounter. *Id.* at 98–100, 120.

At 10:44pm—eight minutes after the officers announced Adams was in custody—an officer called for medical attention for Adams's injuries. [47-1] at 4. Adams's injuries included multiple lacerations on both legs from dog bites, a Lisfranc fracture-dislocation of his left ankle, and fractures of several bones in his

left foot. Medical Records [47-4] at 1; *see also* [47-1] at 10–12. The medical records say Adams injured his ankle while fleeing, but Adams denies this. *Id.* at 1, 8–9; [51-1] at 37.

Three years later, Adams sued Shack, Dedmon, Rankin County Sheriff Bryan Bailey ("Bailey"), and Rankin County. Compl. [1]. Adams claimed Shack's use of VooDoo constituted excessive force in violation of the Fourth Amendment and Defendant Rankin County and its Sheriff, Bailey, maintained policies that encouraged such conduct. *Id.* ¶¶ 75–86. He also sued under Section 1985, claiming the deputies conspired to injure him. *Id.* ¶¶ 87–95.

Shack, Bailey, and Rankin County (collectively "Defendants") now move for summary judgment on four grounds:

1. Shack argues he is entitled to qualified immunity because no constitutional violation occurred and, even if it did, no clearly established law put him on notice that his conduct was unlawful.
2. Bailey also argues that qualified immunity shields because he did not act with deliberate indifference to Adams's rights.
3. Rankin County seeks summary judgment, contending that Adams has identified no policy, custom, or deliberate indifference that could support municipal liability.
4. Finally, Defendants move for summary judgment on Adams's Section 1985 conspiracy claim because the intracorporeal conspiracy doctrine bars recovery.

*See generally* Defs.' Mot. for Summ. J. [47]; Defs.' Mem. in Supp. [48]; Defs.' Reply [52]. Adams rejects these arguments and asks this Court to deny Defendant's [47] Motion in its entirety. Pl.'s Resp. [58]; Pl.'s Mem. in Supp. [59].

II.     Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation modified). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (citation modified).

"If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Bayle v. Allstate Ins.*, 615 F.3d 350, 355 (5th Cir. 2010) (citation modified). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* The non-movant's failure "to offer proof concerning an essential element of [his] case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified). "The sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (citation modified). But "[c]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation will not survive summary judgment." *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (citation modified).

III.    Analysis

A.  Section 1983 Claims

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .." 42 U.S.C. § 1983. "[M]unicipalities and other local governmental bodies are 'persons' within the meaning of [Section] 1983." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citation modified). Adams brings Section 1983 claims against Shack, Bailey, and Rankin County.

The Court dismisses the Section 1983 claims against Bailey and Rankin County, but the claim against Shack survives.

6

      1.  Shack

Shack asserts a qualified immunity defense to Adam's excessive force claims. [48] at 4–9. The Court denies summary judgment on qualified immunity because of the material dispute about whether Adams was handcuffed when Shack released VooDoo.

"Qualified immunity provides government officials with immunity from suit insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Lee*, 73 F.4th 376, 381 (5th Cir. 2023) (citation modified). Adams bears the burden of negating Shack's qualified immunity defense. *Bailey v. Ramos*, 125 F.4th 667, 674 (5th Cir. 2025) (citation modified). To do so, he must "point to summary judgment evidence (1) that [Shack] violated a federal statutory or constitutional right and (2) that the unlawfulness of [his] conduct was clearly established at the time of the incident." *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (citation modified).

Adams "can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *adopted*, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016). And "[w]here an officer's qualified immunity depends on the resolution of genuine factual disputes, summary judgment is improper." *Robinson v. Cloud*, No. 2:20-CV-

1042, 2024 WL 1689278, at *6 (W.D. La. Apr. 18, 2024) (citing *Washington v.*

*Thomas*, No. 23-30006, 2023 WL 4704142, at *1 (5th Cir. July 24, 2023)).

The Court examines each prong of qualified immunity below.

a.    Whether a Constitutional Violation Occurred

The first prong of the qualified immunity analysis asks whether Shack

violated Adams's constitutional rights. Adams says Shack violated his Fourth

Amendment protection against excessive force. There are disputed issues of fact

about Shack's use of force that preclude summary judgment on this issue

An officer's use of force is excessive under the Fourth Amendment if the

plaintiff can show: "(1) injury, (2) which resulted directly and only from a use of

force that was clearly excessive, and (3) the excessiveness of which was clearly

unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)

(citation modified). Neither party disputes that VooDoo injured Adams.[1] So the

Court focuses on the second and third elements, which "collapse into a single

objective-reasonableness inquiry." *Peña v. City of Rio Grande City*, 879 F.3d 613,

619 (5th Cir. 2018).

---

[1] Shack concedes that VooDoo caused the lacerations on Adams's legs. [48] at 6
("Shack does not dispute that VooDoo bit Adams on his left thigh and right calf areas"). But
Shack says Adams's ankle injury resulted from a fall not VooDoo's bite, citing notations in
Adams's medical records. [52] at 4 (citing [47-4]). As a result, Shack asks the Court to grant
summary judgment as to Adams's ankle injury. *Id.* The Court declines to do so because of
Adams's sworn testimony denying a fall. [51-1] at 77; 128. This testimony is competent
summary judgment evidence. *See Owens v. Neovia Logistics, L.L.C.,* 816 F. App'x 906, 909
(5th Cir. 2020). At summary judgment, the Court does not weigh credibility or credit
medical-form shorthand over Adams's testimony.

If Shack's conduct was reasonable, his force was not excessive. To assess reasonableness, the Court considers three factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). And "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation modified).

Under Adams's version of events, Shack allowed VooDoo to attack him while he was handcuffed and compliant. [51-1] at 59–64, 102–03. If that is true, Shack's decision was unreasonable. When a suspect is subdued, "permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016); *see also Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (using force on handcuffed, compliant arrestee violates clearly established law).

Shack says Adams remained free, continued to move, and endured only an 11-second attack while officers worked to secure him. [47-2] ¶¶ 6–7; [52-5] at 2. If his story is true, qualified immunity might attach. *See, e.g.*, *Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018) (holding that an officer was entitled to qualified immunity when he used K9 force to subdue a fleeing suspect).

This fact dispute precludes summary judgment. At summary judgment, the Court must take facts knowable to the defendant officer as the nonmovant presents

them. *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam); *see also Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) ("[S]elf-serving affidavits and depositions may create fact issues even if not supported by the rest of the record.") (citation modified). And Adams's sworn testimony is unequivocal: Shack allowed VooDoo to attack when Adams was handcuffed and compliant. Under Adams's version of events, Shack's use of force was unreasonable and unshielded by qualified immunity. *Cooper*, 844 F.3d at 524.

> b. Whether the Unlawfulness of Shack's Conduct Was Clearly Established

Next, the Court must determine whether the unlawfulness of Shack's conduct was clearly established. In determining what constitutes clearly established law, a court must first look to Supreme Court precedent and then to Fifth Circuit precedent. *Hicks v. LeBlanc*, 81 F.4th 497, 503-04 (5th Cir. 2023). "The relevant inquiry is whether existing precedent placed the conclusion that [Shack] acted unreasonably in these circumstances beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 12.

The Court need not search far and wide for case law on this subject. As the Fifth Circuit held in *Cooper*, "we state only the obvious: Under the facts in this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable." 844 F.3d at 524. Other cases—before *Cooper*—firmly establish this point. *Malone v. City of Fort Worth, Tex.*, No. 4:09-CV-634-Y, 2014 WL 5781001, at *14 (N.D. Tex. Nov. 6, 2014) (releasing a police dog on a

compliant, non-threatening suspect, is objectively unreasonable under clearly established law). More broadly, it is clearly established law that using violence against a suspect who is not actively resisting constitutes an excessive use of force. *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (holding that this right was clearly established as of 2013); *see also Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (emphasizing "fair warning" that force against a subdued suspect is unlawful).

One final clarification. The record, even viewed in Adams's favor, would not permit liability for Shack's decision to release VooDoo when Adams fled; qualified immunity is appropriate there. *See Shumpert*, 905 F.3d at 323 ("the 'measured and ascending' use of force is not excessive when a suspect is resisting arrest"); *see also White v. Calvert,* No. CV H-20-4029, 2021 WL 6112791, at *11 (S.D. Tex. Dec. 27, 2021) (distinguishing between an officer's initial decision to release a canine to apprehend a fleeing suspect and the officer's decision to allow the canine to bite the suspect when he no longer posed a threat).

What survives summary judgment is Adams's claim that Shack knowingly permitted VooDoo to bite him while he was restrained and compliant. Because that claim turns on material fact disputes that bear directly on both *Graham* reasonableness, the Court denies summary judgment on Adams's Section 1983 claim against Shack.

2.  Bailey

The Court next turns to Adams's Section 1983 claim against Shack's supervisor, Sherriff Bailey. The Court grants summary judgment for Bailey.

To begin, "[s]ection 1983 offers no *respondeat superior* liability." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Therefore, Sheriff Bailey is liable only if "he affirmatively participates in the acts that cause the constitutional deprivation, or [ ] he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Adams says Sheriff Bailey is liable under the second of these two options. He claims Sheriff Bailey's "failure to supervise [] inevitably led to the violent attack on [Adams]. [51] at 4.

To survive summary judgment on this theory, Adams must identify (1) a failure to supervise or train, (2) a causal connection to his injury, and (3) deliberate indifference. *Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024). The third element—deliberate indifference—"is a stringent standard of fault, requiring proof that [Bailey] disregarded a known or obvious consequence of his action." *Est. of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005) (citation modified). Deliberate indifference requires a pattern of similar constitutional violations that made the risk "obvious" and the resulting harm "highly predictable." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) (citation modified).

Adams offers no competent summary judgment evidence of Bailey's deliberate indifference. Instead, Adams quotes two full pages of a motion for summary judgment in a different lawsuit. [51] at 8–10 (quoting *Jenkins, et al. v. Rankin County, Miss. et al.*, No. 3:23-cv-374-DPJ-ASH Pl.'s Mem. in Opp. [146] at 16–17). This lengthy quotation references three depositions of individuals not involved here: Steve Godfrey, Dwayne Thornton, and Jeffrey Middleton. *Id.* It also quotes an expert report from Thomas J. Tiderington, who is not an expert witness here. *Id.*

In Adams's view, lifting two pages from another plaintiff's motion creates a material dispute of fact about Bailey's alleged deliberate indifference here. [51] at 8. But Adams is wrong for two reasons.

First, the same rules that govern the admissibility of expert testimony at trial govern at summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). Adams did not disclose an expert. *See* Pl.'s Answers to Defs.' First Set of Interrogs. [52-2] at 3–4. Nor did he disclose Steve Godfrey, Dwayne Thornton, or Jeffrey Middleton as witnesses. *Id.* And Adams does not contend—much less show— that his nondisclosure was substantially justified or harmless. As a result, Adams cannot rely on this two-page quotation to defeat summary judgment. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required . . . the party is not allowed to use that information or witness to supply evidence on a motion.").

Second, Bailey is entitled to summary judgment even if the Court considers these inadmissible statements. This is so because Adams has not established a pattern of similar constitutional violations that made the risk "obvious" and the resulting harm "highly predictable." *Peterson*, 588 F.3d at 849. This incident occurred in May 2021. But Adams identifies no pre-May 2021 pattern of unconstitutional canine bites, no prior complaints about VooDoo or Shack, and no evidence that Bailey ignored known risks that his deputies would deploy a dog against a handcuffed suspect. *Id.* at 851 (requiring "sufficiently numerous prior incidents" that show "similarity and specificity" to establish a pattern) (citation modified). Adams cannot rely on events from 2022 and 2023 to prove what Bailey knew in 2021. *See Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations").

Because Adams has not produced competent summary judgment evidence that Bailey acted with deliberate indifference, the Court grants summary judgment for Bailey.

### 3. Rankin County

The Court also grants summary judgment for Rankin County on Adams's Section 1983 claim. Even assuming Shack violated Adams's Fourth Amendment protections, Adams identifies no Rankin County policy or custom that would justify holding Rankin County liable for Shack's actions.

Local governments like Rankin County may not be sued under Section 1983 for vicarious liability. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S.

658, 694 (1978). Rather, to hold Rankin County liable for Shack's actions, Adams must prove that Rankin County itself was responsible for the constitutional violation. *See Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023). To prevail, Adams must show "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (citation modified).

Adams cannot point to a written Rankin County policy that led to his injuries. Instead, he argues that Rankin County had a "well-settled practice of using excessive force" that was the "moving force" behind the constitutional violation. *See* [51] at 10–11. To hold Rankin County liable under a pattern-and-practice theory, Adams must prove "a pattern of abuses that transcends the error made in a single case." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009). "Where prior incidents are used to prove a pattern, they must have occurred for so long and so frequently that the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* (citation modified). This requires "similarity and specificity" and "sufficiently numerous prior incidents" rather than "isolated instances." *Id.*

But Adams has not proven a pattern or practice. The Court rejects Adams's pattern-and-practice argument for the same reasons already discussed above for the claim against Sheriff Bailey. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

15

persistent and widespread as to practically have the force of law." *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (citation modified). And "[a]n official policy must be either unconstitutional or have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Shumpert*, 905 F.3d at 316 (citation modified).

Even if Adams had shown a pattern of excessive force, he has not attributed it to a policymaker. Adams grounds his municipal-liability theory in the same facts he advances against Sheriff Bailey. [51] at 10–11. And that is where his claim falters. As discussed above, Adams offers no competent summary judgment evidence that Bailey—Rankin County's final policymaker—implemented or tolerated any policy or custom that caused the alleged constitutional violation. Nor is there evidence that Bailey had actual or constructive knowledge of an unconstitutional practice. His claim fails because "a city cannot be liable for an unwritten custom unless actual or constructive knowledge of that custom is attributable to a city policymaker." *Peña*, 879 F.3d at 623.

Without proof of an official policy, a policymaker's deliberate indifference, or a causal connection to a constitutional injury, Adams's *Monell* claim cannot survive. So the Court grants summary judgment for Rankin County.

B.  Section 1985(3) Claim Against All Defendants

Finally, the Court grants summary judgment for Defendants on Adams's Section 1985(3) claim.

To survive summary judgment under Section 1985(3), Adams must show: "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (citation modified). The statute also demands class-based animus. *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). Adams's claim fails as a matter of law for two independent reasons.

First, the record contains no evidence of a conspiracy—no "meeting of the minds" to deprive Adams of equal protection. A Section 1985(3) conspiracy requires "operative facts" showing an agreement; inconsistencies in the police report are not enough. *See Wong v. Stripling*, 881 F.2d 200, 202–03 (5th Cir. 1989) (explaining the requirements of a Section 1985(3) claim). Nor do alleged omissions in an incident report convert an administrative lapse into an act "in furtherance" of a conspiracy. *See Jackson*, 959 F.3d at 200.

Second, the intracorporate-conspiracy doctrine defeats Adams's claim. Employees of the same governmental entity acting within the scope of their employment are treated as a single legal actor incapable of conspiring with itself under Section 1985. *Benningfield v. City of Houston*, 157 F.3d 369, 378–79 (5th Cir. 1998). The exception to this rule requires proof that defendants acted for purely private ends, not to further the employer's business. *Id.* All alleged conspirators here were Rankin County deputies performing law-enforcement duties during a felony arrest. Adams invokes the "personal-purpose" exception but identifies no

admissible evidence that any deputy acted outside his official role to pursue private ends.

In short, Adams provides neither the factual predicate of an agreement nor any basis to evade the intracorporate-conspiracy bar. Without those elements, his Section 1985(3) claim cannot proceed. Summary judgment for Defendants is therefore appropriate.

IV.    Conclusion

For the reasons stated above, the Court DENIES the [47] Motion as to the Section 1983 claim against Shack but GRANTS the [47] Motion as to the Section 1983 claims against Bailey and Rankin County, as well as the Section 1985 claim against all Defendants. In doing so, the Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 21st day of November, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE